# In the United States Court of Federal Claims

No. 15-1263C
(Filed October 6, 2016)

|  |  |
|---|---|
| CLAUDE MAYO CONSTRUCTION COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br><br> Defendant. | Keywords: Subject Matter Jurisdiction; Motion to Dismiss; Tucker Act; Contract Disputes Act; Claim; Sum Certain |

*Nicholas J. DiCesare*, Barclay Damon, LLP, Buffalo, NY, for Plaintiff.

*Russell J. Upton*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Martin F. Hockey*, Assistant Director, for Defendant. *Justin Hawkins*, Assistant General Counsel, Office of the General Counsel, General Services Administration, Of Counsel.

**OPINION AND ORDER**

**KAPLAN, Judge.**

The plaintiff in this case, Claude Mayo Construction Company (Claude Mayo), filed this action to challenge the General Services Administration's (GSA) default termination of a contract to renovate certain office space in a federal building in Syracuse, New York. In its complaint, Claude Mayo alleges: 1) that the default termination was improper; 2) that GSA committed material breaches of the contract; 3) that its improper termination was intended to and did in fact interfere with Claude Mayo's ability to secure other contracts; and 4) that GSA was unjustly enriched because it received services from Claude Mayo for which it failed to provide adequate compensation. Compl. ¶¶ 73–95, ECF No. 1.

The matter is currently before the Court on the government's motion to dismiss the second, third, and fourth causes of action identified above for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims (RCFC). According to the government, this Court lacks Tucker Act jurisdiction over those causes of action because, among other reasons, Claude Mayo failed to exhaust its

administrative remedies as required by the Contract Disputes Act (CDA), 41 U.S.C. §§ 7103–09. Def.'s Mot. to Partially Dismiss Compl. (Def.'s Mot.) at 10–15, ECF No. 10. Also before the Court is Claude Mayo's cross-motion for a stay. In that motion, Claude Mayo requests that—should the Court agree with the government's jurisdictional arguments—it stay consideration of Count I of the complaint to allow the Contracting Officer (CO) to render a final determination on certain monetary claims that Claude Mayo set forth in an April 25, 2016 Supplemental Claim Letter that it submitted while this action was pending. Pl.'s Resp. to Def.'s Mot. and Cross-Mot. for a Stay (Pl.'s Resp.) at 16–18, ECF No. 11.

For the reasons set forth below, the government's motion to partially dismiss the complaint is **GRANTED**. Therefore, the claims set forth in the second, third, and fourth causes of action in the complaint are **DISMISSED** without prejudice. Claude Mayo's cross-motion for a stay of further proceedings regarding the claims set out in its first cause of action is also **GRANTED**.

## BACKGROUND[1]

### I.   Initial Performance of the Contract

On July 23, 2013, GSA awarded Claude Mayo a contract to perform renovations of the United States Attorney's Office located in the James M. Hanley Courthouse and Federal Building in Syracuse, New York. Compl. ¶¶ 7–9; id. Exs. A–B. The contract was priced at $732,003. Compl. ¶ 9.

On August 2, 2013, after Claude Mayo submitted performance and payment bonds as well as certificates of insurance, GSA issued it a Preliminary Notice to Proceed. Compl. ¶ 11; id. Ex. C. That preliminary notice instructed Claude Mayo to begin obtaining security clearances for its employees and informed it that a Final Notice to Proceed would be issued prior to the start of any on-site work. Compl. ¶¶ 12–13; id. Ex C. The notice also stated that the performance period for on-site work was 150 calendar days. Compl. ¶ 13; id. Ex. C.

On November 21, 2013, GSA issued the Final Notice to Proceed. Compl. ¶ 17; id. Ex. D. Claude Mayo received and signed the notice on November 22, 2013 and began work that same day. Compl. ¶ 21; id. Ex. D. Thereafter, on December 24, 2013, the parties entered into an Amendment of Solicitation/Modification of Contract designated "PS01." Compl. ¶ 28; id. Ex. E. That amendment modified the original contractual requirement that Claude Mayo refurbish fifteen Packaged Terminal Air Conditioner (PTAC) units. As modified, the contract required that Claude Mayo remove the existing PTAC units and replace them with fifteen new PTAC units. Compl. ¶¶ 24–26. The parties agreed to increase the contract amount by $79,043, to $811,046. Id. ¶ 27. In addition,

---

[1] The facts in this section are based on the documents attached to the parties' briefs as well as the allegations in Claude Mayo's complaint, which the Court assumes to be true for purposes of deciding the motion to dismiss.

PS01 stated that "[t]his contract is hereby extended for the additional work from 28 Feb 2014 to 01 Apr 2014." Id. ¶ 30; see also id. Ex. E.

GSA sent Claude Mayo additional modification requests (designated PS02 and PS03) on January 13 and 16, 2014, respectively. Compl. ¶¶ 35–40. These modification requests concerned woodwork, carpeting, duct work, partitions, and doors. Id. Both modification requests required responses by January 24, 2014. Id. ¶¶ 38, 41. Claude Mayo provided its responses on January 28, 2014, but the parties did not reach agreement on either request. Id. ¶¶ 42, 45.

## II.   GSA Terminates the Contract for Default

On February 11, 2014, GSA sent Claude Mayo a "Notice to Cure," in which it asserted that Claude Mayo had failed to comply with contractual requirements that it provide schedules of completed work and schedules of work to be done, and had also failed to respond to contract modification requests PS02 and PS03. Compl. ¶¶ 50–51; see also Def.'s Mot. App. at A1. The letter expressed GSA's concerns that those failures "endanger[ed] performance of the contract" and that, as a result, the contract completion date would not be met. Def.'s Mot. App. at A1.

On February 20, 2014, Claude Mayo responded in writing to the Notice to Cure. Compl. ¶ 53. In its response, Claude Mayo asserted that schedules of work done and to be completed were provided at each weekly meeting and that, in fact, it had responded to modification proposals PS02 and PS03. Id.

Subsequently, on March 17, 2014, GSA issued a "Show Cause Notice" to Claude Mayo, warning that it was considering termination of the contract for default. Compl. ¶ 55; see also Def.'s Mot. App. at A14–15. The letter alleged that Claude Mayo had failed to provide schedules showing that the project would be completed by April 1, 2014, which GSA identified as the required completion date. Compl. ¶ 56. It also asserted that Claude Mayo had failed to respond to modification requests and to install certain components per contract specifications. Id. ¶ 57. The Show Cause Notice concluded that Claude Mayo had the opportunity to "present, in writing, any facts bearing on the question" within ten days of receipt of the notice. Def.'s Mot. App. at A14.

Before the ten-day period expired, GSA sent Claude Mayo proposed contract modification PS04, which would have altered the completion date for the contract from April 1, 2014, to April 21, 2014. Compl. ¶¶ 60–61. Claude Mayo declined to sign PS04 because it was of the view that the parties had already extended the contract completion date to July 14, 2014, in connection with the execution of contract modification PS01. Id. ¶ 62.

On March 28, 2014, GSA issued a "Stop Work Order," which directed Claude Mayo to cease all work and further orders for materials and services under the contract. Id. ¶ 58; see also Def.'s Mot. App. at A16. A few weeks later, on April 17, 2014, GSA unilaterally issued PS04. Compl. ¶ 63. According to GSA, this extended the contract completion date to April 21, 2014. See id. ¶¶ 61–63, 67. GSA followed this action with a

notice dated April 22, 2014, which assessed liquidated damages based on Claude Mayo's failure to complete the contract by the previous day. See id. ¶¶ 61, 67; see also Def.'s Mot. App. at A17.

On May 20, 2014, GSA issued a "Show Cause Notice – 2nd" based on Claude Mayo's "fail[ure] to perform [the contract] within the time required" as well as its failure to "cure the conditions endangering performance." Def.'s Mot. App. at A18. Claude Mayo apparently did not respond. See Compl. ¶¶ 67–68. Accordingly, on June 12, 2014, GSA issued a "Notice of Termination for Default." Id. ¶ 68; see also Def.'s Mot. App. at A29–A36. In the Notice, GSA alleged that the default termination was justified by, among other things, Claude Mayo's failure to provide schedules and respond to modification requests, to obtain coordination drawings, to provide a project coordinator, and to complete the contract by the completion date. Compl. ¶ 69. The Notice concluded by stating that it represented "the final decision of the Contracting Officer" and that Claude Mayo had "the right to appeal this decision under the Disputes clause of the contract." Def.'s Mot. App. at A36.

### III. Claude Mayo's Unsuccessful Appeal of the Default Termination

On May 18, 2015, some eleven months after GSA issued its final decision, Claude Mayo submitted a letter to the CO "appeal[ing] its termination for default." Compl. ¶ 71; see also Def.'s Mot. App. at A37–41. Specifically, the letter stated that it was "submitted as an appeal – pursuant to Federal Acquisition Regulation 52.233-1 – of [GSA's] Stop Work Order and Notice of Termination." Def.'s Mot. App. at A37. The letter responded in some detail to GSA's allegations that Claude Mayo had failed to comply with contractual obligations and deadlines. Id. at A37–41. It requested that GSA: "1) rescind the Notice of Termination; 2) withdraw all claims relative to Performance Bond S443011; and 3) permit [Claude Mayo] to complete contract No. GS-02P-13-PW-C-009." Id. at A37. "[I]n the alternative," Claude Mayo stated, GSA should "make payment for all outstanding pay applications and lost profits due [Claude Mayo]." Id.

On July 22, 2015, the CO denied Claude Mayo's appeal. Compl. ¶ 72; see also Def.'s Mot. App. at A69–72. The CO rejected Claude Mayo's assertions regarding its compliance with its contractual obligations and specifically denied each of Claude Mayo's requests for relief. Def.'s Mot. App. at A71. The CO concluded by notifying Claude Mayo that the decision letter represented the CO's final decision on Claude Mayo's claims, and that Claude Mayo was entitled under the CDA either to appeal the default termination to the Board of Contract Appeals or to file a direct action in this court. Id. at A72.

### IV. This Action

On October 27, 2015, Claude Mayo filed its complaint in this Court. Compl. ¶ 5. As noted above, the complaint asserts four causes of action: 1) that GSA's termination of the contract for default was improper and without basis in law or fact; 2) that GSA breached the contract; 3) that GSA wrongfully interfered with Claude Mayo's ability to secure other contracts; and 4) that GSA has been unjustly enriched by accepting services

4

from Claude Mayo without compensation. Id. ¶¶ 73–95. Claude Mayo seeks judgment in the form of a declaration that GSA's termination of the contract for default was improper and should be converted to a termination for convenience. Id. ¶ 78. It also seeks damages for breach of contract, including amounts allegedly owed for work performed, lost profits, and costs. Id. ¶ 83. Further, Claude Mayo seeks damages under its third cause of action for the loss of contracts that it would have obtained but for GSA's alleged improper actions. Id. ¶¶ 89–90. Finally, in connection with its unjust enrichment claim, Claude Mayo requests damages for the full value of the work it performed. Id. ¶ 95.

On April 26, 2016, the government filed the motion to dismiss that is now before the Court. See Def.'s Mot. In its motion, the government argues that the Court should dismiss the second, third, and fourth causes of action in the complaint because, with respect to its second cause of action, Claude Mayo failed to properly present its breach of contract claim to the CO before filing its action in this Court; because its third cause of action sounds in tort; and because its fourth cause of action, alleging unjust enrichment, is an implied-in-law claim that is outside this Court's jurisdiction under the Tucker Act. See id. at 10.

Claude Mayo has filed a response to the government's motion to dismiss and a cross-motion for a stay. See Pl.'s Resp. In its response and cross-motion, Claude Mayo states that it does not oppose the government's motion to dismiss its third and fourth causes of action. Id. at 11 n.2. Claude Mayo argues, however, that the Court has jurisdiction over its second cause of action for breach of contract because, contrary to the government's argument, it submitted a valid claim for monetary damages for breach of contract when it submitted its May 18, 2015 letter appealing its termination for default. Id. at 11–13. In any event, Claude Mayo notes, it submitted a supplemental claim letter to the CO on April 25, 2016. Id. at 10. If the Court concludes that the May 18, 2015 letter is not sufficient to meet the exhaustion requirements of the CDA, Claude Mayo argues, the Court should stay this action to allow the CO to render a final determination as to the claims set forth in the supplemental claim letter, after which Claude Mayo proposes it would "amend its complaint to address any deficiencies in its claims as currently stated in the complaint." Id. at 18.

The Court heard oral argument on the motions on October 5, 2016.

## DISCUSSION

### I. Standards for Motions to Dismiss Under RCFC 12(b)(1)

Generally, in deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all undisputed facts in the pleadings and draws all reasonable inferences in favor of the plaintiff. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). However, if a movant disputes the basis of the Court's jurisdiction, the allegations in the complaint are not controlling and the Court may review evidence extrinsic to the pleadings. Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583–84 (Fed. Cir. 1993). The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. Brandt v. United States, 710 F.3d 1369,

1373 (Fed. Cir. 2013); see also Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). If the court does not have subject matter jurisdiction, it must dismiss the claim. RCFC 12(h)(3).

## II.     This Court's Jurisdiction Over Contract Disputes

The Tucker Act grants the United States Court of Federal Claims the power "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a). Further, the Court has "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41 [i.e., the CDA], including a dispute concerning termination of a contract." Id. § 1491(a)(2).

The CDA applies to any express or implied contract made by an executive agency for, among other things, the procurement of construction, alteration, repair, or maintenance of real property. 41 U.S.C. § 7102(a)(3). Under the CDA, when a contractor has a claim against the government, the "claim . . . shall be submitted to the contracting officer for a decision." Id. § 7103(a)(1). This must be done in writing. Id. § 7103(a)(2). Further, "[e]ach claim . . . shall be the subject of a written decision by the contracting officer." Id. § 7103(a)(3).

Once a contractor submits a claim to the CO and receives a written decision, it may bring an action directly in the Court of Federal Claims "in lieu of appealing the decision of a contracting officer . . . to an agency board." Id. § 7104(b)(1). The contractor must do so within twelve months from "the date of receipt of a contracting officer's decision." Id. § 7104(b)(3).

Compliance with the dispute resolution procedures set forth in the CDA is a prerequisite to the Court's exercise of jurisdiction over claims covered by that act. See England v. The Swanson Grp., Inc., 353 F.3d 1375, 1379 (Fed. Cir. 2004) (observing that "jurisdiction over an appeal of a [CO's] decision is lacking" unless the claim is first presented to the CO for decision). Thus, for the Court to have subject matter jurisdiction over a CDA dispute, there must be "both a valid claim and a [CO's] final decision on that claim." M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (citing James M. Ellett Constr. Co. v. United States, 93 F.3d 1537, 1541–42 (Fed. Cir. 1996)).

Under the CDA, a "claim" is a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain." See England, 353 F.3d at 1379; see also Paradigm Learning, Inc. v. United States, 93 Fed. Cl. 465, 472 (2010) (citing FAR 52.233-1(c)); 48 C.F.R. § 2.101. The written demand or assertion must be non-routine. See James M. Ellett Constr. Co., 93 F.3d at 1542. Further, a claim under the CDA must contain a "clear and unequivocal statement that gives the [CO] adequate notice of the basis and amount of the claim." Contract Cleaning Maint., Inc. v. United States, 811 F.2d 586, 592 (Fed. Cir. 1987).

### III. The Court Lacks Jurisdiction over the Second, Third, and Fourth Causes of Action in Claude Mayo's Complaint

As noted above, the government has moved to dismiss Claude Mayo's second, third, and fourth causes of action. As Claude Mayo apparently recognizes, the government's jurisdictional objections as to its third and fourth causes of action are well taken. Thus, because "tort cases are outside the jurisdiction of the Court of Federal Claims" under the Tucker Act, Keene Corp. v. United States, 508 U.S. 200, 214 (1993), this Court lacks jurisdiction over Claude Mayo's third cause of action, alleging improper interference with its ability to contract with other parties. See Lea v. United States, 592 Fed. App'x 930, 933 (Fed. Cir. 2014) (no Tucker Act jurisdiction over claim of tortious interference with a contract); Jireh Consulting Inc. v. United States, 167 Fed. App'x 179, 180 (Fed. Cir. 2006) (affirming dismissal of claims, including tortious interference, as the Court "does not possess jurisdiction to entertain tort claims"). Similarly, Claude Mayo's fourth cause of action, which is based on unjust enrichment, "'relies on equitable principles' [and] is . . . 'based on an implied-in-law contract theory.'" See Lumbermens Mut. Cas. Co. v. United States, 654 F.3d 1305, 1316 (Fed. Cir. 2011) (quoting Barrett Ref. Corp. v. United States, 242 F.3d 1055, 1062 (Fed. Cir. 2001)). Because the "Tucker Act's waiver of sovereign immunity extends only to contracts either express or implied in fact, and not to claims on contracts implied in law," Lumbermens Mut. Cas. Co., 654 F.3d at 1316 (internal quotation and citation omitted), the Court lacks jurisdiction over the claims set out in Claude Mayo's fourth cause of action as well.

On the other hand, Claude Mayo's second cause of action is for breach of contract, and thus lies squarely within this Court's Tucker Act jurisdiction over cases covered by the CDA. But, as described above, because the CDA applies to that cause of action, in order to invoke this Court's jurisdiction, Claude Mayo must have first submitted a claim for breach of contract to the CO for decision. That means Claude Mayo must have presented a written demand to the CO seeking, as a matter of right, the payment of money in a sum certain. These prerequisites have not been met in this case.

First, Claude Mayo never advised the CO that it was asserting a claim for breach of contract. Its argument that it did so in its May 18, 2015 letter responding to GSA's decision to terminate the contract for default lacks merit. See Pl.'s Resp. at 12. As best the Court can understand Claude Mayo's argument, its contention is that the CO had notice that it was presenting a breach of contract claim because of the "ongoing dispute" between GSA and Claude Mayo and because in the letter it requested that "GSA 'make payment for all outstanding pay applications and lost profits due [Claude Mayo].'" Id. (quoting Def.'s Mot. App. at A37).

The Court finds Claude Mayo's arguments unpersuasive. The May 18th letter does not make any assertion that GSA breached the contract it entered into with Claude Mayo. Rather, the letter clearly states it is an "appeal . . . of [GSA's] Stop Work Order and Notice of Termination." Def.'s Mot. App. at A37. In addition, the content of the letter does not relate to any alleged breach of contract by GSA; rather, it presents a point-by-point rebuttal of the allegations GSA made in its Notice of Termination about Claude

7

Mayo's alleged non-compliance with its contractual obligations. See Def.'s Mot. App. at A37–A42.

Further, the first request in the May 18, 2015 letter is that GSA "rescind the Notice of Termination." Id. at A37. And the reason for requesting that GSA rescind the termination is illustrated by the letter's third request: "[to] permit [Claude Mayo] to complete [the] contract." Id. Although that third request asks, in the alternative, for GSA to make payment for outstanding pay applications and lost profits, id., there was no reason for the CO to understand that the basis for this request was some breach of contract by GSA (as opposed to, for example, a request that the default termination be converted to a termination for convenience).[2]

Finally, even if the May 18, 2015 letter had provided a clear statement that Claude Mayo was asserting a claim for damages based on breach of contract, Claude Mayo concedes that the letter itself did not seek the payment of money in a sum certain. See Pl.'s Resp. at 13. Nor did it cross-reference in any way another document that set forth the sum certain being sought by Claude Mayo for breach of contract.

The Court is not persuaded by Claude Mayo's argument that the sum certain requirement can be satisfied in this case by piecing together other documents in the CO's possession, i.e., the pay applications that Claude Mayo submitted to GSA on January 17, 2014 and February 20, 2014, and the Revised Contractor Cost Breakdown it provided to GSA by email on June 25, 2013. See Pl.'s Resp. at 14–15. The latter—a ten-page spreadsheet reflecting Claude Mayo's cost breakdown for the entire project, which was submitted before the contract was even awarded and before it was modified—contains as its last line item the following: "Profit $675,747 X 7% = $47,302." Pl.'s Resp. App. at A114. Presumably, it is Claude Mayo's argument that—based on the amount of money Claude Mayo projected it would receive as profit when it sought the contract award—the CO had notice of the amount Claude Mayo was claiming in the May 18th letter when it requested that GSA "make payment for all outstanding pay applications and lost profits due [Claude Mayo]." Def.'s Mot. App. at A37.

As is readily apparent, there would be no reason for the CO to understand that Claude Mayo's request for payment of lost profits due was a request for the dollar amount of the profits it projected before the award was even made. Moreover, the mere

---

[2] Although at oral argument Claude Mayo contended that its improper termination for default claim cannot be separated from its breach of contract claim because they are "one and the same," see Oral Argument at 9:56–10:02 (October 5, 2016), a termination for default is a claim by the government, separate from a contractor's breach of contract claim. See Kenney Orthopedic, LLC v. United States, 88 Fed. Cl. 688, 701–02 (2009); see also Armour of Am. v. United States, 69 Fed. Cl. 587, 590–91 (2006) (holding that a claim for breach of contract is of a different scope and distinct from a claim for improper default termination). Thus, Claude Mayo must have presented a separate claim for breach of contract to the CO to establish this Court's jurisdiction. It cannot rely on implications from its letter challenging the termination for default.

fact that these documents were available to the CO hardly provided him with a "clear and unequivocal statement" that would give him "adequate notice of the basis and amount of the claim" that Claude Mayo alleges it intended to submit. Contract Cleaning Maint., Inc., 811 F.2d at 592. Although in some circumstances several documents may be considered together for purposes of establishing that a valid claim has been submitted, the "combination must still make clear how much the plaintiff is willing to accept in settlement of its claim." N. Star Alaska Hous. Corp. v. United States, 76 Fed. Cl. 158, 185 (2007). Further, the additional documents must be sufficiently cross-referenced to permit the CO to understand that together they constitute the claim. Id. at 185–86 (reasoning that for multiple documents to be considered "a claim," one document must "unambiguously state[] the costs involved" while another "cross-reference[s] the earlier document"); see also Kvaas Constr. Co. v. United States, 22 Cl. Ct. 740, 742 (1991) (finding sum certain requirement met where letter asserting claim enclosed another letter sent previously that detailed the exact claim and stated the specific amount to which the contractor claimed an entitlement).

In this case, there was no statement of the actual amounts being claimed in the May 18th letter, and no cross-reference to any other document that contained a statement of such amounts. The purpose of the claim requirement is to promote the resolution of contractual disputes without resort to litigation. N. Star Alaska Hous. Corp., 76 Fed. Cl. at 184 (citing H.L Smith, Inc. v. Dalton, 49 F.3d 1563, 1566 (Fed. Cir. 1995)). It would frustrate that purpose were this Court to find that the sum certain requirement can be met through implications drawn from multiple documents which were not even referenced in the alleged claim letter. See id. ("If no sum certain is specified, the [CO] cannot settle the claim by awarding a specific amount of money 'because such a settlement would not preclude the contractor from filing suit seeking the difference between the amount awarded and some larger amount never specifically articulated to the [CO].'" (quoting Exec. Court Reporters, Inc. v. United States, 29 Fed. Cl. 769, 775 (1993))).

In short, Claude Mayo did not present a valid claim for breach of contract to the CO before filing its complaint in this case because its May 18th letter neither identified breach of contract as the basis for its claim nor set forth a sum certain being sought as damages for that breach. Accordingly, the Court lacks jurisdiction over the claims set forth in the complaint's second cause of action.

## CONCLUSION

For the reasons set forth above, the government's motion to dismiss Claude Mayo's second, third, and fourth causes of action under RCFC 12(b)(1) is **GRANTED,** and those counts are **DISMISSED** without prejudice.

Claude Mayo's cross-motion for a stay is **GRANTED** with respect to its first cause of action. The case is **STAYED** for sixty days to permit the CO to issue a final decision as to the claims set forth in Claude Mayo's supplemental letter. The parties shall file a joint status report with the Court no later than sixty days from the date of this Order advising the Court of the status of the claims before the CO and proposing a schedule to govern future proceedings in this case.

9

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan  
ELAINE D. KAPLAN  
Judge